# In the United States Court of Federal Claims

**No. 04-1210C**
**(Filed: September 8, 2006)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **OSI, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | **Jurisdiction; 28 U.S.C. § 1500;** |
| | * | **Contamination; Comprehensive** |
| **v.** | * | **Environmental Response** |
| | * | **Compensation and Liability Act,** |
| **THE UNITED STATES,** | * | **42 U.S.C. §§ 9601-9675; Fifth** |
| | * | **Amendment Taking** |
| **Defendant.** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

J. Doyle Fuller, Montgomery, Alabama, for Plaintiff.

Terry M. Petrie, U.S. Department of Justice, Environment and Natural Resources Division, Denver, Colorado, for Defendant. Major Grant L. Kratz, Air Force Environmental Law and Litigation Division, Arlington, Virginia, Of Counsel.

---

## MEMORANDUM OPINION

---

**WILLIAMS**, Judge.

In this takings case, Plaintiff, OSI, Inc., seeks compensation from the United States for contaminating its property. Plaintiff claims that the Government's actions in depositing hazardous waste on and around Plaintiff's property and fencing Plaintiff's property to contain the waste constitute a taking proscribed by the Fifth Amendment.

Plaintiff previously filed an action in the United States District Court for the Middle District of Alabama, challenging the contamination and seeking injunctive relief under the Resource Conservation and Recovery Act (RCRA) and reimbursement of costs it expended to clean up the contamination under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) OSI, Inc. v. United States, No. 98-T-920-N (M.D. Ala. Mar. 26, 2001), vacated in part, 285 F.3d 947 (11th Cir. 2002).[1] These claims are still pending before the District Court.[2]

---

[1] RCRA requires the Government to abate imminent and substantial endangerment to health and the environment caused by the disposal of hazardous and solid wastes and to implement a plan for the removal and permanent disposal or destruction of all contamination. 42 U.S.C. § 6972

At issue is whether the instant takings claim stemming from the contamination must be dismissed under 28 U.S.C. § 1500, which bars this Court from hearing a claim that was pending in another court at the time suit was filed here.[3] Because Plaintiff seeks different monetary relief in the District Court action and the instant action, the District Court cannot grant Plaintiff the requested amount of damages sought in this court, § 1500 does not divest this Court of jurisdiction over Plaintiff's contamination claim.

## Background[4]

In July 1997, the Government informed Plaintiff that the groundwater beneath Plaintiff's

---

(2000). CERCLA provides reimbursement for costs incurred in response to contamination. 42 U.S.C. § 9607 (2000).

Plaintiff's District Court complaint initially sought recovery under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 (2000), but those claims were dismissed before Plaintiff filed its action in this Court. The Eleventh Circuit affirmed the dismissal under the discretionary function exception. OSI, Inc. v. United States, 285 F.3d 947, 949 (11th Cir. 2002).

[2] Plaintiff amended its District Court complaint to include causes of action against the Government for extra hazardous activities, public or private nuisance, trespass, and property damage. Pl.'s Mot. for Leave to Amend Compl. ¶ 8, Def.'s Partial Mot. to Dismiss (Def.'s Mot.), Ex. 14 at 151.

[3] Defendant also contends the claim is time-barred under 28 U.S.C. § 2501 (2000). A cause of action accrues when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence. Forman v. United States, 329 F.3d 837, 841 (Fed. Cir. 2003); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir.1998). Although Defendant contends that Plaintiff knew of contamination on the 12 acres of its land subject to the lease as early as 1997, Plaintiff claims that it did not discover that the Government had buried hazardous waste on its property outside that 12-acre leasehold until December 2002. See Tr. at 37-46. It is unclear whether these Governmental actions give rise to separate takings which accrued at separate times. Cf. Brown Park Estates - Fairfield Dev. Co. v. United States, 127 F.3d 1449 (Fed. Cir. 1997) (under continuing claim doctrine, claim for violation accrued when that particular wrong occurred having its own associated damages, independent of the accrual of other wrongs). The record is inadequate at this juncture for the Court to resolve Defendant's statute of limitations defense.

Defendant does not seek dismissal of Plaintiff's claim pertaining to the erection of the fence. Defendant's Partial Motion to Dismiss (Def.'s Mot.), Ex. 14 at 151.

[4] This background is derived from the pleadings, motion papers, and attachments thereto. Defendant "accepts as true the facts alleged in Plaintiff's complaint" for purposes of this motion. Def.'s Mot. at 3 n.2.

property was contaminated with "trichlorochene"[5] (TCE), benzine, and other hazardous wastes. Compl. ¶¶ 1, 2, 5, 6. The contamination was likely the result of Defendant's solid waste disposal activities at a 12-acre landfill site, Landfill 04 (LF04), which is part of a larger 25-acre tract of land owned by Plaintiff. Id. Defendant also engaged in disposal activities at two other landfill sites -- Landfill 05 (LF05) and Landfill 06 (LF06) -- located adjacent to Plaintiff's property. Def's Mot., Ex. 7 at 103 (Third Amended Compl. ¶¶ 4-5). Defendant engaged in disposal activities beginning in the 1950's and continuing until August 10, 1993, pursuant to a lease agreement between Maxwell Air Force Base (MAFB) and Plaintiff's predecessor in title. Compl. ¶ 1.

On January 22, 1998, Plaintiff filed a claim pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680 (2000), with the United States Air Force (USAF) claiming, inter alia, property damage and diminution of Plaintiff's corporate worth. Def.'s Mot., Ex. 2. Specifically, Plaintiff alleged: "As a direct and proximate result of [the Government's] extra hazardous activity . . . OSI's property has been polluted and contaminated with toxic and hazardous substances." Def.'s Mot., Ex. 2 at 36. Plaintiff further claimed that the "[v]aluation of [its] real property and improvements -- exclusive of the value of the business enterprise -- was $842,500 as of December 14, 1994" and that as a "direct and proximate result of the illegal governmental activity . . . this value has been reduced to zero." Id. at 37. Plaintiff's claim included a valuation report dated November 4, 1997, which stated that the "value of [OSI, Inc.'s] corporate enterprise has been reduced from $1,975,000 to $360,000 -- [resulting in] damages in the amount of $1,615,000." Id.

**Plaintiff's District Court Complaint**

On August 19, 1998, after the USAF rejected Plaintiff's claim, Plaintiff filed a complaint in the United States District Court for the Middle District of Alabama under the FTCA, 28 U.S.C. §§ 1346(b) and 2671, pleading five causes of action; the fifth cause of action sought money damages for the taking of property caused by the Government's contamination and pollution. Def.'s Mot., Ex. 2.

On December 7, 1998, Plaintiff filed a motion to sever and transfer its fifth cause of action from the District Court to the United States Court of Federal Claims (COFC). Def.'s Mot., Ex. 5. Defendant opposed this motion contending that this Court would lack jurisdiction pursuant to 28 U.S.C. § 1500. On June 9, 1999, Plaintiff filed a second amended complaint in the District Court action adding a sixth and a seventh cause of action alleging that Defendant had violated the Resource Conservation Recovery Act (RCRA) and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Def. Mot., Ex. 6.[6] On March 26, 2001, the District

---

[5] Although Plaintiff avers that its property was contaminated with "trichlorochene (TCE)," (See Compl. ¶ 6) TCE is commonly used to refer to trichloroethylene, not "trichlorochene." See Moden v. United States, 404 F.3d 1335, 1338 (Fed. Cir. 2005).

[6] Plaintiff again amended its complaint to make slight changes in language as a "mere technicality in properly pleading a claim under CERCLA." Def.'s Mot., Exs. 6, 7.

Court denied Plaintiff's motion to sever and transfer its fifth cause of action and granted both Defendant's motion to dismiss the first five causes of action and its motion for summary judgment on the RCRA and CERCLA claims. Def.'s Mot., Exs. 8-10.

Plaintiff appealed to the United States Court of Appeals for the Eleventh Circuit. On March 12, 2002, the Court of Appeals affirmed the dismissal of the first five causes of action and vacated the court's dismissal of the sixth and seventh causes of action, remanding the CERCLA and RCRA issues to the District Court. OSI, Inc. v. United States, 285 F.3d 947, 953 (11th Cir. 2002), reh'g denied (2002). On July 26, 2004, Plaintiff filed an action in this Court claiming an inverse condemnation while its CERCLA and RCRA claims were pending in the District Court.[7]

**Plaintiff's CERCLA and RCRA Claims Before the District Court**

After the remand from the Eleventh Circuit, Plaintiff continued to pursue its RCRA and CERCLA claims in the District Court.[8] In its CERCLA claim, Plaintiff alleged that as a result of

---

[7] The parties concede that Plaintiff's RCRA claim does not seek the same relief as its takings claim so as to bar this Court's jurisdiction under § 1500. Plaintiff's RCRA claim alleges that the Government's disposal of hazardous wastes as defined by Section 1004(2)(A) of RCRA, 42 U.S.C. § 6903(2)(A) (2000), violated Section 3005 of RCRA, 42 U.S.C. § 6925(a) (2000), because Defendant failed to obtain a treatment, storage, or disposal permit. Def.'s Mot., Ex. 7 at 111 (Third Amended Compl. ¶¶ 28-29). Plaintiff seeks injunctive relief under 42 U.S.C. § 6972, which would require Defendant to "[a]bate any imminent and substantial endangerment to health and the environment caused by the . . . alleged disposal of hazardous and solid wastes" and "commence and complete . . . the formulation and implementation of a plan for the removal and permanent disposal or destruction of all contamination . . . ." Def.'s Mot., Ex. 7 at 113 (Pl.'s Third Amended Compl. at 12).

[8] At this time, Plaintiff's third amended complaint was the most current complaint before the District Court. On March 26, 2004, Plaintiff filed a motion for leave to file a fourth amended complaint in the District Court. Def.'s Mot., Ex. 13. Plaintiff's fourth amended complaint added a ninth cause of action for trespass, as well as a tenth cause of action for inverse condemnation, contending that Defendant, by fencing off a portion of OSI's property within the LF04 site, engaged in a physical taking of Plaintiff's property in violation of the Fifth Amendment. Id. On September 1, 2004, after Plaintiff had filed its COFC action and before the District Court had decided Plaintiff's motion for leave to file a fourth amended complaint, Plaintiff filed a motion for leave to file a fifth amended complaint. Def.'s Mot., Ex. 14. On September 9, 2004, the District Court ordered mandatory mediation for the parties, denied as moot Plaintiff's motion to for leave to file a fourth amended complaint, and reserved ruling on Plaintiff's motion for leave to file a fifth amended complaint pending the outcome of mediation. Def.'s Mot., Ex. 15.

On January 3, 2005, after the parties' efforts to mediate the District Court case failed, the District Court granted Plaintiff's motion for leave to file a fifth amended complaint, which included causes of action against the Government for extra hazardous activities, public or private nuisance,

Defendant depositing waste in the three landfill sites, hazardous material was deposited onto and migrated to Plaintiff's property. Def.'s Mot., Ex. 7 at 114-15 (Third Am. Compl. ¶¶ 37-42). Plaintiff alleged that it had incurred response costs of at least $863.08 for retaining a hydro geologist. Id., Ex. 7 at 115 (Third Am. Compl. ¶¶ 9-10). Pursuant to CERCLA, 42 U.S.C. § 9607,[9] Plaintiff sought "judgment against defendants in an appropriate sum to be determined by the court, plus interest and costs for all necessary response costs incurred." Id., Ex. 7 at 116 (Third Am. Compl. at 15). Specifically, Plaintiff sought the "response cost for retaining an expert hydro geologist whose services were necessary to monitor, assess and evaluate the release of hazardous substances." Id., Ex. 7 at 115 (Third Am. Compl. ¶ 41). In addition, pursuant to CERCLA Section 113, 42 U.S.C. § 9613 (2000), Plaintiff demanded "contribution from this government agency in an appropriate sum to be determined by the court, plus interest and costs for all necessary response costs incurred by OSI and a declaratory judgment on liability for future response costs or damages."[10] Id., Ex. 7 at 116.

**Plaintiff's Action in the Court of Federal Claims**

On July 26, 2004, Plaintiff filed a complaint in this Court alleging that Defendant's actions "amount to an 'inverse condemnation' in violation of the Fifth Amendment of the United States Constitution." Compl. ¶ 9. Plaintiff first alleged that the contamination of groundwater caused by the disposal of waste materials upon Plaintiff's land inside and outside the LF04 site constituted a taking of its property. Id. ¶¶ 1-7. Second, Plaintiff alleged a taking by Defendant of its property by the placement of the fence. Id. ¶ 11. Plaintiff seeks monetary damages "in excess of $10,000,000.00 for the taking of its property . . . [and] incidental damages including relocation expenses." Id. ¶ 12.

---

trespass, property damage, and disposal of hazardous waste in contravention of RCRA and CERCLA.

[9] CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section . . . any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

42 U.S.C. § 9607(a)(4)(B).

[10] 42 U.S.C. § 9613(f)(1) provides: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."

Plaintiff also demands "[r]ecovery of appropriate costs, attorneys fees and expenses under the provisions of the Equal Access to Justice Act, and for the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970" as well as "[s]uch other and different relief as may be appropriate under the provisions."[11] Id. at 10.

## Discussion

Defendant contends that this Court is barred from asserting jurisdiction over Plaintiff's contamination claim under 28 U.S.C. § 1500 because Plaintiff filed its complaint for inverse condemnation in this Court while its complaint for CERCLA response costs in the United States District Court for the Middle District of Alabama was pending.

The Tucker Act both confers jurisdiction upon the United States Court of Federal Claims and waives sovereign immunity with respect to certain actions for monetary relief brought against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983); see also Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005); Boling v. United States, 220 F.3d 1365, 1370 (Fed. Cir. 2000) (recognizing that when the government takes property and fails to compensate the owner, the Tucker Act provides jurisdiction for this Court to enforce the owner's compensatory right).

The Tucker Act's jurisdictional grant is limited by 28 U.S.C. § 1500 which provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

Determining the Court's jurisdiction over this action for the purposes of 28 U.S.C. § 1500 requires the Court to determine whether the plaintiff had the same claim against the United States or its agent pending in another Court at the time of filing here. Keene Corp. v. United States, 508 U.S. 200, 207 (1993); Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004), cert. denied, 543 U.S. 1153, (2005), reh'g denied 544 U.S. 993 (2005); Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1549 (Fed. Cir. 1994); Heritage Minerals, Inc. v. United States, 71 Fed.Cl. 710, 714

[11] The Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA) requires federal agencies to provide relocation expenses to persons displaced by eminent domain and compensates homeowners and tenants for the costs of acquiring a "comparable replacement dwelling." 42 U.S.C. §§ 4601, 4622 (2000).

(2006). According to the Federal Circuit, the purpose of § 1500 is to "force an election where both forums could grant the same relief, arising from the same operative facts." Johns-Manville Corp. v. United States, 855 F.2d 1556, 1564 (Fed. Cir. 1988). In other words, § 1500 is meant to "prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." Id. at 1562; see also United States v. County of Cook, Ill., 170 F.3d 1084, 1090-91 (Fed. Cir. 1999).

When determining whether a claim is "pending" for purposes of § 1500, this Court follows the longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." Keene, 508 U.S. at 207 (citations omitted); Whyte v. United States, 59 Fed. Cl. 493, 496 (2004). The parties agree that only Plaintiff's RCRA and CERCLA claims were pending in the District Court at the time Plaintiff filed its complaint with this Court. Pl.'s Resp. To Def's Mot. (Pl.'s Resp.) at 8; Def.'s Resp. to Pl's Additional Mem. In Opp'n to Def.'s Mot. at 4; J. Status Report, Ex. A.[12]

For a claim to be precluded under 28 U.S.C. § 1500, "the claim pending in another court must arise from the same operative facts, and must seek the same relief." Harbuck, 378 F.3d at 1328 (quoting Loveladies, 27 F.3d at 1551). As the Federal Circuit recognized, "claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." Loveladies, 27 F.3d at 1550 (quoting Johns-Manville, 855 F.2d at 1567); see also County of Cook, Ill., 170 F.3d at 1091. In order to determine if the claims before the two courts are the same, this Court must compare the claims in this action against those raised in the District Court. Harbuck, 378 F.3d at 1328 (quoting Loveladies, 27 F.3d at 1549).

Plaintiff has admitted that the facts underlying OSI's CERCLA action in District Court and its takings claim here are the same.[13] In both cases, OSI's legal theories are premised on the

---

[12] The District Court subsequently granted Plaintiff leave to file a Fifth Amended Complaint adding a trespass claim against the United States. See Tr. (Dec. 20, 2005), at 29-32.

[13] During a colloquy with the Court, counsel for Plaintiff characterized the facts underlying the District Court case and COFC actions as follows:

> Well, it again is the same facts. The basic facts in the federal district case and this Court, out of fairness to everybody, Judge, are the same facts, and that is, over a period of time beginning apparently in the fifties the government came onto OSI's property and buried toxic and hazardous chemicals. That's an oversimplified version of the facts. And both actions, the one in the District Court and the one here [in the COFC], again out of fairness, are seeking relief based upon the actions of the government in contaminating OSI's property.

allegations that OSI's property has been polluted and contaminated with toxic and hazardous substances as a direct and proximate result of the Government's extra hazardous activity. Nonetheless, Plaintiff argues that the two claims do not arise from the same "operative" facts because the facts needed to prove liability under CERCLA in the District Court are different than those needed to prove a taking in the COFC. Pl.'s Additional Mem. in Opp'n to Def.'s Mot. at 8. Plaintiff argues that in its CERCLA action, the Defendant is strictly liable for damages if Plaintiff proves that the site of the incident was a "facility" as defined by CERCLA, that there was a release or threatened release of a hazardous substance, that Plaintiff incurred response costs as a result of that release or threatened release, and that the Defendant qualifies as a "covered person" under 42 U.S.C. § 9607(a). Id. at 3-4. On the other hand, Plaintiff argues that in order to prevail in this Court, it must show that it suffered a compensable loss of a protected property interest, that the nature of the Government action benefitted the Government at the expense of Plaintiff or deprived Plaintiff of the right to enjoy its property for an extended period of time, that the Government's interference with Plaintiff's property was substantial and frequent, and that the injury to Plaintiff's property was foreseeable. Id. at 8-10.

In Loveladies, the Federal Circuit articulated the difficulty with completely divorcing legally operative facts from the legal theory they underlie. The Court addressed the operative facts inquiry as follows:

> Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is "operative" - i.e., relevant to a judicially imposed remedy - it is necessarily associated with an underlying legal theory, that is, the cause of action. For example, without legal underpinning, words in a contract are no different from casual correspondence. Because it is unnecessary for our decision in this case, we need not further refine the meaning of "operative facts."

27 F.3d at 1551 n.17; see Heritage Minerals, 71 Fed.Cl. at 715. Here, the government's conduct in contaminating Plaintiff's property is the sine qua non of both the taking and CERCLA claims -- it is the occurrence claimed both to have destroyed Plaintiff's property value and to have required CERCLA response costs. As such, this same underlying government conduct is "necessarily associated" with each legal theory, and the claims arise from the same operative facts.

**Relief**

As the Court in Loveladies recognized, to come within the proscription of 28 U.S.C. § 1500, there must be a showing both that the claims arise from the same operative facts and that they seek the same relief. 27 F.3d at 1551-52. See Harbuck, 378 F.3d at 1328 (finding both requirements of

---

Tr. (Dec. 20, 2005), at 7-8.

§ 1500 met); Dico, Inc. v. United States, 48 F.3d 1199, 1204 (Fed. Cir. 1995) ("Loveladies further established that if the Court of Federal Claims complaint pleads facts which demonstrate a different legal injury from that pursued in another court, or seeks different relief, it involves a different claim which § 1500 does not bar."). Failing to fulfill either the "same operative facts" or the "same relief" requirement precludes the COFC from applying 28 U.S.C. § 1500. See Loveladies 27 F.3d at 1551 ("We know of no case arising from the same operative facts in which § 1500 has been held to bar jurisdiction over a claim praying for relief distinctly different from that sought in a pending proceeding."); Heritage, 71 Fed. Cl. at 716.

At issue here is whether the CERCLA response costs constitute the same relief as damages for the taking of Plaintiff's property. This court concludes that because these claims for monetary relief represent different measures and amounts of damages, the relief claimed is not the same. As the Claims Court recognized in Webb & Associates, Inc. v. United States, 19 Cl. Ct. 650, 653 (1990), this court in construing § 1500 "retains jurisdiction where plaintiff requests money damages under identical theories in two forums, but only the [Claims Court] can grant the requested amount of relief." In Webb, the Claims Court retained jurisdiction over an inverse condemnation action because the plaintiff was limited to $10,000 in damages in the District Court and could not attain the full recovery sought in that forum, but could in the Claims Court. This case parallels Webb since the District Court lacks jurisdiction to grant OSI the full amount of its claimed takings damages. In the District Court, OSI is only claiming a fraction of the monetary relief sought in its takings claim, -- response costs incurred in analyzing the extent of the contamination in an unspecified amount to be determined by that court. In contrast, here Plaintiff seeks $10,000,000 in damages for "the destruction of the value and taking of its property," damages which are not available under CERCLA. Pl.'s Response at 9. CERCLA does not provide compensation to a private party for damages resulting from contamination, but instead, "permits a private party to be reimbursed for all or some of the costs already incurred in response to contamination." Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 91 (2d Cir. 2000).[14]

Defendant contends that the Federal Circuit's decision in Dico, Inc. v. United States, 48 F.3d 1199 (Fed. Cir. 1995), mandates dismissal of the contamination claim here. Although Dico also involved a CERCLA action in the District Court and a takings claim here, that case is distinguishable because the amount of monetary relief sought in both fora was identical -- to the penny-- and represented the exact same measure of compensation -- CERCLA cleanup costs. Unlike the instant case and Webb, the District Court in Dico had the authority to award all monetary damages claimed as the remedy requested for CERCLA costs. In short, unlike this case, the relief sought in both fora

---

[14] CERCLA defines "response" to mean remove, removal, remedy, and remedial action. 42 U.S.C. § 9601 (2000). CERCLA permits a declaratory judgment allocating future response costs between potentially responsible parties. See id.; In re Dant Russell, Inc., 951 F.2d 246, 249-50 (9th Cir. 1991).

in Dico was the exactly same. See id.[15]

In sum, Plaintiff does not and cannot seek under CERCLA the damages for the destruction and diminution in the value of its property claimed as compensation for the taking here. Accordingly, this action is not barred by § 1500.

## Conclusion

Defendant's Partial Motion for Dismissal pursuant to 28 U.S.C. § 1500 is hereby DENIED.

The Court will conduct a telephonic conference on **October 3, 2006, at 11:00 am ET** to discuss whether this action should be stayed pending resolution of District Court action. See Truckee-Carson Irrigation Dt., 223 Ct. Cl. 684 (1980); Webb, 19 Cl. Ct. at 655-56. In addition, the parties are directed to confer and clarify their positions on the statute of limitations issue.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[15] Nor does Harbuck, 378 F.3d 1324, help Defendant. In Harbuck the plaintiff brought the identical claims for sex discrimination under a Title VII theory in District Court and an Equal Pay Act theory here. In both actions, the plaintiff complained of discriminatory lower wages and sought "back wages in the amount of the difference between what she actually earned and what she would have earned at the GS-12 level from January 1990 until she is restored to her proper and correct grade." Id. at 1327. Thus, in Harbuck, as in Dico, because the plaintiff sought the exact same quantum and measure of monetary damages, § 1500 barred an action in this court.